UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
DELTA DIVISION

EBONIE MEUX, on behalf of
Jayden Dewayne Foster, a minor child                                    PLAINTIFF

V.                          No. 2:20-CV-188-BSM-JTR

KILOLO KIJAKAZI, Commissioner
Social Security Administration                                          DEFENDANT

## RECOMMENDED DISPOSITION

The following Recommended Disposition ("Recommendation") has been sent to United States District Judge Brian S. Miller. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within 14 days of this Recommendation. If no objections are filed, Judge Miller can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

### I.   Introduction

On August 17, 2016, Plaintiff, Ebonie Meux ("Meux"), applied for childhood supplemental security income benefits on behalf of her minor child, Jayden Dewayne Foster ("Foster"). (Tr. at 15). Meux alleged that Foster's disability began

on November 1, 2015.[1] *Id*. After conducting a hearing on April 16, 2019, the Administrative Law Judge ("ALJ") denied Meux's application for benefits on October 18, 2019. (Tr. at 30). On July 22, 2020, the Appeals Council declined to review the ALJ's decision. (Tr. at 1). Thus, the ALJ's decision now stands as the final decision of the Commissioner, and Meux has requested judicial review.

For the reasons stated below, the Court should reverse the ALJ's decision and remand for further review.

## II. The Commissioner's Decision

For minor child disability cases, an ALJ must follow a three-step sequential evaluation. Under this framework, the ALJ is required to first determine if the minor is engaging in substantial gainful activity. 20 C.F.R. § 416.924. Next, the ALJ must decide if the impairment, or combination of impairments, is severe. *Id*. Finally, the ALJ must determine if the Plaintiff has an impairment that meets, medically equals, or functionally equals a listed impairment. *Id*.

For medical equivalence, the ALJ refers to the Child Listing of Impairments in Disability Evaluation. 20 C.F.R. Pt. 404, Subpt. P, Appx. 1. This is an index of medical conditions and the signs or symptoms required for a minor to meet a Listing.

---

[1] At the hearing, Meux amended the onset date to August 17, 2016, the application date. (Tr. at 57).

2

For functional equivalence, a minor has met a Listing if his impairment or combination of impairments results in a "marked" limitation in two domains of functioning, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926. The six domains of functioning are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. *Id*.

The ALJ in this case found that Foster, who was born on November 20, 2009, had not engaged in substantial gainful activity since the application date of August 17, 2016. (Tr. at 18). He next determined that Foster had the following severe impairments: speech/language delay and borderline intellectual function. *Id*.

The ALJ determined that Foster did not meet or medically equal a Listing. (Tr. at 19). Finally, he determined that Foster did not have an impairment that functionally equaled the severity of the Listings; that is, he concluded that Foster did not have severe impairments that resulted in two marked limitations or one extreme limitation in the six functional domains. (Tr. at 18–29). He found that: (1) Foster had less than a marked limitation in acquiring and using information; (2) Foster had less than a marked limitation in attending and completing tasks; (3) Foster had less than a marked limitation in interacting and relating with others; (4) Foster had no limitation in moving about and manipulating objects; (5) Foster had no limitation in

the ability to care for himself; and (6) Foster had less than a marked limitation in health and physical well-being. *Id*. Therefore, the ALJ determined that Foster was not disabled from August 17, 2016 through October 18, 2019, which was the date of the ALJ's decision. (Tr. at 30).

## III.   Discussion

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'"

*Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.  **Meux's Arguments on Appeal**

Meux contends that the evidence supporting the ALJ's decision to deny benefits is less than substantial. She argues that the ALJ erred when he found that Foster had less than marked limitations in the domains of: (1) acquiring and using information; (2) attending and completing tasks; and (3) interacting and relating with others. For the following reasons, the Court finds support for reversal.

Foster suffered from some speech and behavior problems that were documented by his teachers and his family doctor. (Tr. at 285–306, 322–329, 383). He repeated kindergarten, and he was written up for behavior problems several times in the second grade. *Id*. A speech pathologist examined Foster in March 2016, and found that his oral expression skills were severely delayed. (Tr. at 361–363). In

5

2017, Foster's family doctor referred him for speech, behavior and learning support. (Tr. at 383). Two consultative examinations were held, one in 2016 and one in 2017, by Kenneth Jones, Ph.D. (Tr. at 365–374). Dr. Jones found in 2016 that Foster was operating at a borderline to low average intelligence level, but generally could attend to tasks and care for himself. (Tr. at 365–367). In 2017, Dr. Jones drew similar conclusions. (Tr. at 370–374). After a PCP visit in 2017, there was no evidence of further treatment before the April 2019 hearing.

The ALJ conducted the hearing on April 16, 2019 (Tr. at 54–64), but the total of his questions directed at Meux, Foster's mother, comprised less than two transcript pages. (Tr. at 61–62). Most of the hearing was a back and forth between the ALJ and Meux's attorney about procedural matters, rather than an inquiry into the medical issues. (Tr. at 54–64).

The ALJ said at the hearing that the record was incomplete and that he needed to send Foster for a psychological consultative examination, mental status examination, and administration of a WISC-4 intelligence test. (Tr. at 63). The ALJ stated that he "was gonna hold off any further questioning until I get the results of that CE [consultative examination] back, and then ***we'll set this for a supplemental hearing***. I think that's the only way to handle this."[2] *Id*. (emphasis added).

---

[2] Indeed, the record contains some conflicting reports: allegations from Meux and teachers' comments point toward disabling conditions, but CE results show only mild conditions.

The consultative examination did take place on August 9, 2019, and on August 15, 2019, the ALJ sent a letter to Meux's attorney with the results of the examination.[3] (Tr. at 315, 415–418). In the letter, the ALJ presented Meux's attorney with the opportunity to request a hearing and question witnesses, as well as submit oral statements concerning the facts and law. (Tr. at 315). Meux's attorney failed to request any further development, and it can be argued that, in that way, she failed her client. However, the ALJ has an independent duty to develop the record fully, even when the claimant is represented by counsel. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir. 1985); *Snead v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004).

The ALJ never conducted a supplemental hearing. There was no further inquiry of Meux about her son, and no inquiry of Meux about the results of the CE. The ALJ's short examination of Meux at the hearing was insufficient; it did not allow Meux to present her view of her son's impairments, which was important to the case.

Moreover, the ALJ wrote in his October 18, 2019 decision that Dr. Little's opinion was persuasive, so he clearly used the opinion to make his decision. (Tr. at 23-24). But he did not do what he told Meux he would do; he did not hold a second hearing after the final CE, even when he recognized that a second hearing was necessary. The Court finds that the ALJ erred by failing to give Meux a full and fair

---

[3] The consultative examiner, Dr. William Little, Ph.D., concluded that Foster was cognitively immature and of low average intelligence. Dr. Little assessed mild mental function limitations. (Tr. at 415–418).

opportunity to confront the facts of her case. *Montgomery v. Berryhill*, No. 4:17-CV-1207-CDP, 2018 WL 3971949, at *4 (E.D. Mo. Aug. 20, 2018) (a claimant deserves the opportunity to confront the evidence against her and to have a full and fair hearing on her claims).

### III. Conclusion

For the reasons stated above, the Court finds that the ALJ's decision is not supported by substantial evidence. The ALJ erred by failing to properly develop the record.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision be REVERSED and the case be REMANDED for further review.

DATED this 29th day of November, 2021.

_____
UNITED STATES MAGISTRATE JUDGE